Before we turn to our regular business this morning, I'll turn to Judge Hughes for an admission for motion. I have the pleasure of moving the admission of one of my law clerks who is sadly leaving me this week at the end of the week. It's been a great year, my first year, so I thank him. So I move the admission of Joseph Preston Long, who is a member of the Bar and is in good standing with the highest court of Virginia. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. No objection. We enthusiastically grant the motion. Judge Hughes, do I have it? Do you solemnly swear or affirm that you will report yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Reference to the Board of the United States Court of Appeals. Congratulations. Our first case for argument this morning is 14-7040, Martin v. McDonald. Mr. Kinman? Yes, Your Honor. Whenever you're ready. May it please the Court. My name is Max Kinman. I represent the appellant in this matter, Mr. Martin. Your Honor, the issue in this case with Mr. Martin was that he was continuously rated for five or more years 100% disabled, meaning he had prostate cancer and he was rated, he was given a 100% rating for more than five years. However, his regional office then decreased that rating because his prostate cancer went away. He had his prostate gland removed and with that he was cancer free. But as I understand it, the reason for the five years was because of some sort of error or in keeping track that he wasn't examined sooner? That's correct. Under the statutes, Mr. Martin should have been provided an examination after his initial 100% rating, but due to some error in paperwork at the VA, he was not provided that examination, so his 100% disability rating maintained in effect for those five years. But then he did get the benefit, nonetheless, of the increased burden. Is that right, to change his rating? Yes, Your Honor, he does. Because his rating was in effect for five or more years, then the regulation 38 CFR 3.344 does apply. What that regulation states is that for those disability ratings in effect for five or more years, before they can be reduced or changed, there be maintained under the ordinary conditions of life. Where's the question of law in this case? Yes, Your Honor, the question of law is whether that statute and the accompanying case law, Brown v. Brown, as long as well as the, excuse me, that statute as well as Brown v. Brown, whether the material improvement has to be not just for the disability, but for the veteran's entire disability picture. The whole thing in Brown v. Brown was that not only must it be determined that an improvement in the disability occur, but there has to be an improvement in the veteran's ability to function under the ordinary conditions of life and work. Now, the VA in this matter determined, well, his prostate cancer was no longer in effect, so obviously his prostate cancer is gone, and we should reduce his rating, that that is a material improvement in the disability. But your suggestion is that the CAVC or the board in this instance just said, we're just going to look at the fact that his cancer is gone, end of story. But as I read, at least certainly the board opinion, they go on for pages and pages and discuss the residuals. So that seems to be cut against what you can argue is the legal question. And if that's the case, and my reading is right, then why isn't this purely a dispute over fact-finding? Well, Your Honor, in reading the board decision, our argument was that yes, they address all the residuals, but they address the residuals because they have to, because they have to then rate him based on what his residuals are. But they never address the residuals and determine whether or not those residuals actually reflect the material improvement and the veteran's ability to function under life and work. That's not a question of fact, right, or applying the law to the fact. You're equivalent or disputing the board's analysis about how they construed the impact of the substance of the residual. You may be right or you may be wrong about that, but how is that purely within our jurisdiction? Your Honor, I would just respectfully disagree and state that here the board's decision, yes, they address the residuals, but they don't address the application of that law. When addressing Brown v. Brown at 38 CFR 3.344 in the board's decision, they only state that because his disability improved, that that is then an improvement in the veteran's ability to function. They do not address whether or not those residuals are actually, in fact, not an improvement, because if they would have addressed that, there's no way that they could have possibly or plausibly found that the veteran has had some improvement. When he had prostate cancer, for all intents and purposes, he was 100 percent normal. He could walk, he could work, he was completely normal. All he had was prostate cancer. Now, yes, if left untreated, that would most certainly have killed him. After his prostate gland was removed is when he first started to have all sorts of medical problems, urinary frequency, urinating frequently, extreme sexual dysfunction. He cannot control his bladder at all. His nerve bundles down in that region were just completely removed, and if the board would have addressed whether or not he actually had some improvement, there's no way they could have possibly found that he did, because prior to the removal of the prostate gland, for all intents and purposes, Mr. Martin was 100 percent okay. He just had cancer. After the removal of the prostate gland is when he did not have any material improvement, and in fact, he went the other way. Well, then didn't he have significant material improvement in that he no longer had prostate cancer? And that is the question of all here, whether or not it's the material improvement of the disability. Well, where does the 100 percent rating come from? It's because he had prostate cancer, right? That's correct. It doesn't matter if it's significantly impacting his daily life. He gets 100 percent temporarily while he has prostate cancer. That's correct. So your argument seems to be that because that's 100 percent, the logic of it is if he doesn't get better overall in his quality of life, he should maintain the 100 percent, but it seems like there's two different things going on there. He's getting the 100 percent because he has prostate cancer. After he recovers from prostate cancer, which I think he has, then they look at the various symptoms to see if his overall disability picture has improved, right? Yes, Your Honor, but here they did not look at his overall picture to find a material improvement. Well, it seems to me that you're quibbling with the way the board wrote its opinion, because they clearly addressed all the residuals and they determined that he was entitled to a certain level of rating, a 10 or 20 percent rating, and they also gave him a special rating for the loss of a creative organ. So they clearly looked at all this stuff and addressed how that impacted his day-to-day life, didn't they? They did, yes. So isn't it implicit, at least, that they looked at this regulation and determined that he had overall improvement, otherwise they wouldn't have reduced it? Well, in reading the board's decision, they never addressed specifically whether or not there was material improvement, and I agree, they certainly addressed his voiding frequency, they certainly addressed all of his residuals, but they did not address, they addressed those only for rating purposes, only to determine whether or not, what level those should be rated at. They never made a determination that he has actually improved here. And it's a logical conclusion, though, if they've decided that all these things are rated at 10 percent, then he has improved. Because if they were severe enough, they would have rated them at a higher percent. The difference here, though, Your Honor, is that this rating was in effect for five or more years. And two separate examples. If this was a veteran who had some sort of cancer and the cancer rate completely went away, then certainly a reduction after those five years would be back down to zero percent or whatever his rating should be. In this instance, this veteran has been rated consistently for five or more years, and one of the reasons that those regulations are in place are to protect veterans who are rated continuously for that period of time. Because they're off work for that period of time, they're dealing with whatever their severe problem is for that length of time. And for the VA to just turn around and yank that rating away without finding that there was any material improvement, without following the VA's... I think your view of this case really comes down to, under that regulation, you think they have to use specific words to say his condition has improved. I think they have to use the specific words and they actually have to make that finding. And in this matter, there is no way they could have made that finding because his condition did not improve. Let me think about that a little bit. Are you saying that there's no possible way they could have determined as a matter of fact his condition had improved overall? Not based on these facts before. That seems inconsistent with the rating he got. If his condition was so demonstrably poor, it would seem like he would be getting a higher rating on the residuals. Isn't that the logic that it should follow? Your Honor, he was rated 100 percent solely because of cancer. Then the VA regulation... Exactly, that's the point. And so now the symptoms that he's suffering and the effects of the surgery, they've determined only warrant a 10 percent rating. You seem to suggest that no reasonable person could look at this fact and determine that he would be entitled to anything less than a 100 percent rating just on the symptoms. And that seems directly at odds with what they've rated him. Your Honor, if Mr. Martin only had these symptoms and had never had the cancer, had never had the rating in effect, we have no argument with what he's currently rated at. The difference here is that this rating was in effect for five more years. If you look at the basis of disability evaluations, 38 CFR 4.10, the VA's underlying purpose is to rate veterans based upon the body as a whole, based upon the function of the ordinary conditions of daily life, including employment. When a veteran is unemployed for five plus years, regardless of whatever the 100 percent rating is, in this case it was cancer, it's 100 percent rated because of cancer, because the VA doesn't want him to worry about work and cancer. But here there was just no material improvement whatsoever, and the board would not be able to factually find that there was improvement when in effect the opposite thing occurred here. Yes, he was no longer receiving cancer treatment, but moving forward his life was irrevocably changed, and that's why our argument would be, in effect, that that should not change. Why don't we hear from the government while we hear the rebuttal. Thank you, Your Honor. May it please the Court. The Court should dismiss the appeal as Mr. Martin is simply challenging only the application of law to the facts of his case. Here the issue is 38 CFR 3.44, and the necessary finding was made by the board. That's at page JA233 of the appendix. What the regulation states is that there must be, quote, material impairment in the physical or mental condition clearly reflected, and the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life. The board at that page 233 made that specific finding, basically almost paraphrasing the regulation. It stated it is clear from a review of the medical evidence and the veteran's testimony that the evidence considered in the reduction demonstrates material improvement reasonably certain to continue under the ordinary conditions of life. As the court has pointed out, the board considered all the residuals here. The residuals were in the area of urinary frequency and urinary leakage, and the board made specific findings based on the veteran's testimony and also the medical exam, which was done in November of 2009. The evidence based on the medical exam and the testimony was that the urinary frequency was between two to three hours during the day and once at night, and that fit precisely within the 10% rating on the disability schedule. Now, there's some discussion in the briefs with regard to what you look at. I mean, the standard is conditions of life and work, but I understand your position to be that the disability has to affect the earning capacity and not the quality of life, of daily life. That's correct, Your Honor. The whole rating of disabilities is based on the average impairment of your earning capacity. That's what it's geared to, and that's why, for example, although he does have erectile dysfunction, he cannot have an erection, that doesn't lead to any compensable rating under the disability schedule. He does receive special monthly compensation for that condition, but he doesn't receive anything under the disability schedule. Urination might also affect his earning capacity, right, in terms of assessing his daily productivity. Yes, that's why he has a 10% rating. He has received a 10% rating for the urinary frequency. Here, there's a urinary frequency of every two to three hours and once at night, and that is precisely within the 10% disability rating for urinary frequency, and that's under 38 CFR 4.115A. But all these are questions of the application of the law to the facts of the case, and what I've done is point out that necessary factual finding was made by the board, that being on page 233 of the appendix, and the Veterans Court also recognized that the necessary factual finding had been made by the board. And there's been discussion of Brown v. Brown. All Brown v. Brown did is interpret 38.344, that regulation, and basically paraphrased the regulation, which I've already read to the court. So accordingly, if the court has no further questions, we would ask that the appeal be dismissed. There is something that still isn't clear to me. If, in fact, the 10% is specific to the urinary, to the incontinence disability, and if it's clear that there are other residuals, I don't think anybody has ever said otherwise, then shouldn't there have been some sort of specific treatment of each of the residuals and saying, well, it's rated at zero, and it's rated at zero, and so on? The board went through exactly that process. How can you have a residual of dramatic cancer treatment where the symptoms are undisputed and say that there is no effect? For example, one of the issues was urinary leakage. And in this case, he did not have to wear any absorbent clothing or any absorbent material. And because of that, he has a zero rating for urinary leakage. And that's stated in the board's opinion. And that's precisely under 38 CFR 4.115A. And then the board went to the next residual, which was the frequency. And that was this veteran's primary issue, is the frequency of urination. And that, based on the frequency of two to three times during the day and once at night, then that frequency of urination led to a 10% rating. So he does receive compensation for that residual. And then the board also considered the erectile, the absence of not being able to have an erection, and that received a zero rating under the schedule. And these are the ratings that are set forth specifically under the schedule. So every residual was considered in coming up with the overall rating. Was it an error of fact or an error of law when there are undisputed residual disabilities to say, just don't bother me, that's all zero? It's simply the application of the regulation to the facts of the case. As you said, the facts are not disputed. And under the regulation, he gets a 10% for urinary frequency, and he receives zero for urinary leakage and for the erectile dysfunction. So it's simply an application of the schedule itself to the facts of the case. And therefore, the appeal should be dismissed. I'm thinking about what you say. It seems strange. It doesn't seem really to comport with the entire principle. There's no question as to the cause. It's statutory. It goes back to Agent Orange. And here we have a person who is experiencing a quality of life, let's say, symptoms that would not, according to the statute, have occurred, except for this liability, which is accepted by the government. I understand what Your Honor is saying, but the schedule itself is based on the average impairment of earnings capacity. And in the medical exam that was done, it was noted that he had worked as a truck driver, continues to work as a truck driver, has been working as a truck driver for 20 years, and will continue to do so. And that's what the schedule is based upon, is earning capacity, except for the extra money that is given for a loss of a creative organ, the special monthly compensation that is paid to him. Honorable Judge Newman, I think you make a point that is well noted among veterans and their attorneys, that the rating schedule, in many instances, is just not fair. There are certain disabilities that are rated low and certain disabilities that are given higher ratings. We're not here to argue the disability schedule today, but certainly veterans around this country understand that, in many instances, the VA changes their ratings on them, and ratings where one individual might not even be able to get out of bed are lower than another individual who can work a full-time job. But one of the protections that the veterans are afforded is Section 3.344, and that is when a veteran has been rated consistently with the same rating for five or more years, like Mr. Martin was. He was given a rating, and he knew that because it was rated at 100% for five or more years, he should have been safe. That rating should not be reduced unless there is a material improvement in both the conditions of his life and the conditions of his employment. And neither of those were satisfied. In fact, the facts are very clear here that his conditions of life are worse now. But you're not asking us to re-weight that, obviously. You're asking us to find, as a legal matter, that the Board didn't even consider that. Yes, Your Honor. That the Board did not consider that, and that the Board, because they're misapplying the law. They're only considering... If your argument is that they're misapplying the law, then we don't have jurisdiction, right? That's application of all the facts. Not applicating the law to this fact that the statute is not being applied here whatsoever. That the statutory protections afforded to this Veteran are not being considered, and they're not being given to this Veteran. In order for you to prevail, we have to find that the Board completely ignored 3.44. Yes, Your Honor. Well, how is that possible, given what they said on JA-233? Yes, Your Honor. Because on JA-233, again, the Board makes that finding. At the end of that first paragraph, the post-prospectectomy medical records and the Veteran's statements are clear that there has been no recurrence of a cancer-sensitive surgery. They're focusing in on the cancer here. Well, can I direct you to the last phrase of that sentence, which also talks about his urologic symptoms being mild? Isn't that clear that they're addressing the other effects of his cancer surgery and not just the cancer? I don't think that is clear, Your Honor. What I would like to see in this Board decision, what a proper Board decision here would have been, is that the Veteran's symptoms here, the Veteran's urinary... Can I just supplement? If we find that that is addressing his overall disability picture, that's enough, right? Then you're quibbling about whether they've properly applied all the facts. I believe so, Your Honor. However, that is almost an impossibility here. Because if they make that finding, that's an impossible finding for the Board to make. It's not a quibble over the facts, then. It's a quibble over whether that is even possible for them to find. But even if it's an impossible finding, we can't review it, can we? No, Your Honor. But if a Board or the Court just puts in blanket standard language with no factual basis whatsoever... I'm having a little trouble understanding why you think it's an impossibility when they specifically went through each specific symptom and rated them under the schedule, and most of them only warrant a 0% rating. Whether that's fair or not, it means that those symptoms are very mild under the schedule. So why would it be an impossibility? Because his conditions of life and work did not improve here. He had cancer. But he could work and do everything in his life 100% normal. The only difference was he received cancer treatments. After his prostate, he had a surgical removal of his prostate, is when he started having every single one of these problems. He started to have urinary problems. He started to have sexual dysfunction. Which, under the schedule, all are relatively mild. Under the schedule rated, they are relatively mild. But there's certainly... that's no improvement going from 0... What your problem is, the improvement is he no longer has cancer, and he's not going to die immediately. That seems to be a significant improvement. Exactly. That's the improvement that the Board... Of that significant improvement, he has had a mild impairment to other functions of life under the schedule. Yes. So he's had an improvement, but he's not improved. And that's our argument here. 3.344 clearly states it has to be an improvement. Not an improvement within an impairment. An improvement in the daily functions of life and employment. And here, Your Honor, the veteran has not improved. His cancer is gone, but he's received no material improvement in either his life or his employment. If there are no further questions, thank you, Your Honor. Thank you. The case is submitted.